IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a 501(c)(3) NON-PROFIT CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>HONEYWELL AEROSPACE, HONEYWELL INTERNATIONAL, INC., and DOES 1–30, INCLUSIVE,<br><br>    Defendants.<br>                                   / | No. C 11-03723 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND VACATING HEARING** |

**INTRODUCTION**

In this environmental action brought under the Resource Conservation and Recovery Act and the Clean Water Act, defendant moves to dismiss pursuant to FRCP 12(b)(1) and FRCP 12(b)(6). For the following reasons, defendant's motion is **GRANTED IN PART AND DENIED IN PART**. The hearing is **VACATED**.

**STATEMENT**

Plaintiff's complaint alleges the following. Plaintiff is a non-profit corporation dedicated to protecting and restoring the waters of Northern California. Defendants are "past generators, past transporters, or past operators of the site and facility located at 511 O'Neill Avenue, Belmont California . . . and have contributed to the past handling, storage, treatment, transportation, or disposal of a solid or hazardous waste which may present an imminent or substantial

endangerment to health or the environment." The site was used by a solvent sales and recycling company until 1972. In 1985, it was acquired by Allied Corporation, which later merged with defendant Honeywell International, Inc. Plaintiff's members "reside in the vicinity of, derive livelihoods from, own property near, or recreate on, in or near or otherwise use, enjoy and benefit from the watersheds, land, rivers, and associated natural resources into which [defendants] pollute" (Compl. ¶¶ 9, 13, 17, 21; Exh. A).

In 1990, volatile organic compounds were detected in the groundwater at the site. Defendants allegedly "discharged TCE (trichloroethylene), cis-1, 2-DCE (a breakdown product of TCE), vinyl chloride and other pollutants to surface and groundwater at and around the Site." Defendants' "handling, use, transport, treatment, storage or disposal of pollutants" has occurred in a manner that has allowed "hazardous constituents" to be discharged in the soils and waters beneath and around the site. The level of pollutants continues to remain above the maximum contaminant levels. Plaintiff states:

> [Defendants] are discharging pollutants found at the Site, from the Site and various point sources within the Site to waters of the United States; and, that the disposition, discharge and release of pollutants from the Site to surface waters is on-going and has been occurring for more than 20 years.

Furthermore, plaintiff alleges that defendants know of the contamination at the site and continue to discharge waste. Defendants continue to do so without a National Pollutant Discharge Elimination System permit, required by the Clean Water Act, that would allow them to discharge pollutants (Compl. ¶¶ 23–28; Exh. A).

In October 2010, plaintiff sent defendants two letters: "Notice of Violations and Intent to File Suit under the Resource Conservation and Recovery Act" and "Notice of Violations and Intent to File Suit Under the Clean Water Act." Each letter stated that the notice of noncompliance provided in it applied to the five years from October 2005 to October 2010. The RCRA letter provided defendants with notice of an intent to commence litigation against Honeywell for the following reasons:

      1.      Honeywell's use and storage of solvents at the Site has violated and continues to violate permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to RCRA regarding storage of solvent in above and under ground storage tanks — 42 U.S.C. § 6972(a)(1)(A);

      2.      Honeywell's operations at the Site have caused solvent contamination of soil and groundwater which presents an imminent and substantial endangerment to human health and the environment — 42 U.S.C. § 6972(a)(1)(B);

      3.      Honeywell's past and current operations at the Site violate the provisions of subchapter III of RCRA, specifically 42 U.S.C. § 6924, which governs the mishandling of hazardous wastes. River Watch contends Honeywell has inadequately maintained records with respect to the manner in which its hazardous wastes have been treated, stored and/or disposed of; inadequately monitored, reported and/or complied with existing regulations concerning its wastes; inadequately provided storage facilities for its wastes; and in the past has not developed adequate contingency plans for effective action to minimize damage from the unauthorized releases of hazardous contaminants — all of which has presented a substantial endangerment to human health and to the environment.

The RCRA letter further alleged that Honeywell was in "violation of a permit, standard, regulation, condition, requirement, prohibition, or order" and "guilty of open dumping . . . by discharging pollutants to the open ground, thereby allowing these pollutants to discharge to both groundwater and surface waters. The letter linked the liability of Honeywell to "its past ownership or operation of discrete conveyances, preferential pathways or wells which have caused pollutants to be discharged to groundwater and surface waters via Honeywell's conduits such as pipes, sewer lines, storm drains, [and] utilities." It also contended that the majority of the asserted violations were continuous, such as:

> threatening to and discharging pollutants to groundwater and surface waters; failure to obtain RCRA-authorized permits; failure to implement the requirements of RCRA; failure to properly label, track or report the type, quantity or disposition of waste; failure to use a manifest system to ensure waste generated is properly handled, stored, treated or disposed of; and, failure to meet water quality objectives.

The letter then listed ten statutory provisions that defendants had allegedly violated (Compl. Exhs. A, B).

3

The CWA letter provided defendants with notice of plaintiff's intent to sue pursuant to Section 1365 of Title 33 of the United States Code. It stated that according to Regional Water Quality Control Board records, "former point sources from the Site continue to discharge pollutants to Belmont Creek." In addition, it notified defendants that they did not have a NPDES permit allowing them to discharge pollutants to the waters. The letter further contended (Compl. Exh. B):

> Polluters are discharging pollutants including TCE and vinyl chloride from the Site and various point sources within the Site to waters of the United States. The point sources were above and below ground storage tanks; chemical storage; recycling equipment; waste ponds and solvent transfer equipment which were removed from the Site. The solid and hazardous waste which was discharged from these tanks is also a point source. These point sources continue to discharge from the Site through conduits, that act as preferential pathways, to the estuary adjacent to the Site.

In July 2011, plaintiff commenced this action against Honeywell Aerospace, Honeywell International, Inc., and Does 1–30 (Dkt. No. 1). Plaintiff brings four claims for relief: (1) imminent and substantial endangerment to health of the environment in violation of the RCRA; (2) creating imminent and substantial endangerment to health or the environment, specifically open dumping in violation of the RCRA; (3) discharge of pollutants from a point source in violation of the CWA; and (4) discharge of storm-water or storm-water containing pollutants without a permit or without compliance with the California general storm-water permit, in violation of the CWA.

Defendant Honeywell International now moves to dismiss plaintiff's complaint for lack of subject-matter jurisdiction pursuant to FRCP 12(b)(1) and failure to state a claim pursuant to FRCP 12(b)(6). No other defendants have joined this motion. This order follows full briefing.

**ANALYSIS**

**1.   SUBJECT-MATTER JURISDICTION.**

**A.   Standard of Review.**

A challenge to standing is properly raised in an FRCP 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). A jurisdictional challenge under FRCP 12(b)(1) may be made on the face of the

4

pleadings or in a factual attack, disputing the truth of the allegations in the pleading. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Ibid.* (internal quotations omitted). If the motion is a facial attack, the court must accept all facts pled in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ibid.* Defendant now brings a facial attack on the complaint for lack of subject-matter jurisdiction.

### B.     Notice Requirement.

Defendant contends that plaintiff's RCRA and CWA letters did not provide it with adequate notice to conform its alleged wrongful behavior to the law, thus divesting the court of subject-matter jurisdiction over this action. This order, however, finds that plaintiff's letters did provide defendant with adequate notice as to three of plaintiff's claims; thus, the complaint will not be dismissed for lack of subject-matter jurisdiction.

A private citizen may commence a civil action on his own behalf under the RCRA or the CWA against any violator of one of the Acts. 33 U.S.C. 1365(a); 42 U.S.C. 6972(a). Before commencing an action, however, the prospective plaintiff must provide notice to the alleged violator, among others. The RCRA requires 60 days notice for violation of any "permit, standard, regulation, condition, requirement, prohibition or order" and 90 days notice to a violator who has contributed to the "past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. 6972. Similarly, the CWA also requires a prospective plaintiff to give 60 days notice before commencing a suit against an alleged violator. 33 U.S.C. 1365(b)(1)–(2). Both statutes require the notice to be issued according to the appropriate regulations. 40 C.F.R. 135.3(a), 254.3(a).

Our court of appeals has elaborated on the notice requirement, keeping in mind that the purpose of the notice requirement is to "give [the alleged violator] an opportunity to bring itself into compliance with the Act and thus . . . render unnecessary a citizen's suit." *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2008). The court stated: "[E]ven at our most lenient we have never abandoned the requirement that there be a true notice that tells

5

a target precisely what it allegedly did wrong, and when. The target is not required to play a guessing game in that respect." *Id.* at 801. The Acts' "notice provisions and their enforcing regulations require no more than 'reasonable specificity.'" *S.F. BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1158 (9th Cir. 2002). Thus, prospective plaintiffs are not required to provide every detail of the alleged violations, but they need to provide enough information so that the nature, location, and dates of the wrongful conduct can be ascertained and the conduct corrected.

### C. Adequacy of Notice under the Resource Conservation and Recovery Act.

Defendant alleges that the notice provided regarding plaintiff's two RCRA claims was inadequate and insufficient to allow defendant to identify its allegedly unlawful conduct. Specifically, defendant contends the notice of plaintiff's first claim, for imminent and substantial endangerment to health or the environment, failed to adequately identify the "activity alleged to constitute the violation" and the "date or dates of the violation." This order finds that plaintiff's notice of this claim was adequate for purposes of establishing subject-matter jurisdiction.

Notice given pursuant to the RCRA, discussed above, must comply with the following regulation (40 C.F.R. 254.3(a)):

> Notice regarding an alleged violation of a permit, standard, regulation, condition, requirement, or order which has become effective under this Act shall include sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of the violation, and the full name, address, and telephone number of the person giving notice.

Concerning plaintiff's first claim, its notice letter stated that "Honeywell's operations at the Site have caused solvent contamination of soil and groundwater which presents an imminent and substantial endangerment to human health and the environment" (Compl. Exh. A). The letter also asserted that volatile organic compounds were detected in the groundwater at the site and specifically identified trichloroethylene and vinyl chloride as the primary chemicals of concern found with contaminant levels above the maximum allowed. Furthermore, notice was also given that the

6

>liability of Honeywell also stems from its past ownership or operation of discrete conveyances, preferential pathways or wells which have caused pollutants to be discharged to groundwater and surface waters via Honeywell's conduits such as pipes, sewer lines, storm drains, utilities and the like, facilitating pollutant migration and discharge to waters of the . . . United States, and contributing to the past or present handling, storage, treatment, transportation, or disposal of any hazardous wastes which may present an imminent and substantial endangerment to health or the environment.

Plaintiff's letter also stated that the violations contained in the notice "are continuing in nature." Because there is a five-year statute of limitations under the RCRA, the notice addresses activity that occurred in the five years before the date of the letter, October 2005 to October 2010.

The RCRA letter was adequate to put defendant on notice as to what conduct allegedly caused a substantial endangerment and when that conduct occurred. Defendant was made aware of soil and groundwater contamination and the specific compounds causing the contamination. Plaintiff further specified "past ownership or operation of discrete conveyances, preferential pathways or wells which have caused pollutants to be discharged to groundwater and surface waters via Honeywell's conduits such as pipes, sewer lines, storm drains, utilities and the like, facilitating pollutant migration and discharge to waters." Plaintiff's letter described the alleged violations and the relevant standard. This was sufficient to put defendant on notice of unlawful activity allegedly occurring at the site and give it an opportunity to cure the problems, which was the purpose of the notice.

Defendant contends that a range of dates was not enough notice under the statute for it to identify the wrongful conduct. Although plaintiff did not identify specific dates when defendant's wrongful conduct allegedly occurred, it did provide a limited range of dates — October 2005 to October 2010. Plaintiff also alleged that this activity by defendant was continuous in nature during the provided date range. The letter did not provide notice of a specific discharge from a specific place on a specific day; it was for defendant's contribution to an imminent and substantial endangerment to health or the environment.

In an action where the plaintiff's claim was for an ongoing failure to implement a plan, "the district court correctly noted, the failure to develop and implement pollution prevention plans are violations occurring at the facility in general. Moreover, the deficiencies in these plans are

7

ongoing, so there is no specific date that can be alleged as the date of the violation." *Natural Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 996 (9th Cir. 2000) (internal citations and quotations omitted).

So too here. Because the notice alleged an ongoing problem rather than a specific incident, the date range was sufficient to put defendants on notice of when the endangerment to health and the environment allegedly occurred. Plaintiff provided adequate notice of its first claim under the RCRA.

With respect to plaintiff's second claim for open dumping, defendant argues the notice was deficient because it never mentioned the relevant statutory provision of the RCRA upon which the claim is now based, Section 6945. In relation to open dumping, plaintiff's notice letter stated:

> Honeywell is guilty of open dumping, as that term is used in the RCRA, by discharging pollutants to the open ground, thereby allowing these pollutants to discharge to both groundwater and surface waters. The Site does not qualify as a landfill under 42 U.S.C. § 6944, and does not qualify as a facility for the disposal of hazardous waste.

In response, plaintiff contends the notice was sufficient to allow defendant to identify the relevant statutory provision. This order agrees.

Plaintiff's notice was required to "include sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated." 40 C.F.R. 254.3(a). Plaintiff specified that defendant was "guilty of open dumping, as that term is used in the RCRA." This was enough to enable defendant to identify the open-dumping prohibition under the RCRA, Section 6945. Moreover, the above-quoted paragraph was the third of six paragraphs appearing under the heading "The Activity Alleged to Constitute a Violation." Contrary to defendant, it "was not required to speculate as to all possible attacks . . . that might be added to a citizen suit." *ONRC Action v. Columbia Plywood, Inc.*, 286 F.3d 1137, 1143 (9th Cir. 2002).

The notice letter sent to defendants was adequate as to both of plaintiff's RCRA claims. Accordingly, defendant's motion to dismiss plaintiff's claims brought under the RCRA for lack of subject-matter jurisdiction is **DENIED**.

8

### D.  Adequacy of Notice under the Clean Water Act.

Defendant argues that the notice letter from plaintiff was inadequate to provide it with notice of plaintiff's claims under the CWA for the discharge of pollutants from a point source and for the discharge of storm-water. In opposition, plaintiff agrees that the notice provided for its fourth claim for storm-water discharge was deficient. Accordingly, defendant's motion to dismiss plaintiff's fourth claim for storm-water discharge is **GRANTED**.

In regard to plaintiff's third claim for discharging pollutants from a point source, defendant contends that the notice was inadequate because it did not mention any current point source from which pollutants were being discharged, as required by the CWA. This order disagrees.

Any notice given pursuant to the CWA must comply with the following regulation (40 C.F.R. 135.3(a)):

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

The notice letter stated, "[a]ccording to records on file with the Regional Water Quality Control Board . . . former point sources from the Site continue to discharge pollutants to Belmont Creek." Moreover, it also stated:

> River Watch hereby notifies Polluters of the fact that they have no NPDES permit allowing them to discharge pollutants to waters of the United States from the Site and numerous point sources within the Site including: the above and below ground storage tanks; chemical storage; recycling equipment; waste ponds and solvent transfer equipment identified in the various records of Polluters and the regulatory agencies which have oversight of the Site.

*          *          *

9

> Polluters are discharging pollutants including TCE and vinyl chloride from the Site and various point sources within the Site to waters of the United States. The point sources were above and below ground storage tanks; chemical storage; recycling equipment; waste ponds and solvent transfer equipment which were removed from the Site. The solid and hazardous waste which was discharged from these tanks is also a point source. These point sources continue to discharge from the Site through conduits, that act as preferential pathways, to the estuary adjacent to the Site. The liability of Polluters stems from their ownership or operation of the Site or due to the activities conducted on the Site by polluters.

This information, included in plaintiff's CWA notice letter, was sufficient to put defendant on notice and allow it to identify the conduct and regulation allegedly violated. A point source is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. 1362(14). Plaintiff's letter identified point sources, how the point sources were allegedly discharging into the waters, defendant's lack of a permit, the regulation defendant supposedly violated, and a range of dates for the allegedly "continuous" violations. Accordingly, defendant's motion to dismiss plaintiff's third claim for lack of subject-matter jurisdiction is **DENIED**.

### 2. ADEQUACY OF THE COMPLAINT.

#### A. Standard of Review.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Dismissal is only proper if there is either a "lack of a cognizable legal theory" or

10

"the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### B. First Claim: Imminent and Substantial Endangerment to Health or the Environment.

Defendant contends that plaintiff does not allege sufficient facts to state a plausible claim for relief under Section 6972 of Title 42 of the United State Code. Section 6972(a)(1)(B) provides that any person may commence a civil action on his own behalf against any person, including:

> any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

Plaintiff's first claim alleges that defendants violated Section 6972(a)(1)(B) by contributing "to the past storage or treatment or transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or to the environment." Furthermore, "pollutants used, handled, stored, transported, disposed of or treated by [defendants] at the Site are in sufficient quantity to pose an imminent or substantial risk to both the environment or to human health." (Compl. ¶¶ 31–32). Plaintiff's claim also incorporates paragraphs 1–30 of the complaint, including allegations that "[Defendants'] handling, use, transport, treatment, storage or disposal of pollutants at the Site has occurred in a manner which has allowed significant quantities of hazardous constituents to be discharged to soil, groundwater and surface waters." Furthermore, plaintiff alleges "the levels of these pollutants remain high above the allowable Maximum Contaminant Levels . . . creating an imminent and substantial endangerment to public health or the environment." Plaintiff further asserts that at least three pollutants allegedly discharged by defendants were known carcinogens or reproductive toxins. (Compl. ¶¶ 23–24). In addition to pleading these facts, plaintiff appended the detailed RCRA notice letter sent to defendants as an exhibit to its complaint and incorporated it therein.

Plaintiff pled sufficient facts in its complaint to state a plausible claim under Section 6972 by alleging that defendants were responsible for discharges of pollutants into soils, ground-water,

11

1    and surface waters that remain high above allowable levels.  Plaintiff also pled facts to show the
2    public danger created by the pollutants.  Defendant argues that plaintiff may be able to
3    demonstrate there was a past danger but not a present one, as the Act requires.  Not so.  Plaintiff
4    alleges that the current presence of carcinogens or reproductive toxins "remain high above the
5    allowable Maximum Contaminant Levels."  Assuming this to be true for purposes of a motion to
6    dismiss as must be done, plaintiff has pled facts stating the danger is current because high levels
7    of toxins currently *remain* in the soil and waters.  Accordingly, defendant's motion to dismiss
8    plaintiff's first claim brought under the RCRA is **DENIED**.

### C. Second Claim: Creating Imminent and Substantial Endangerment to Health or the Environment — Prohibition Against Open Dumping.

Defendant next argues that plaintiff's claim for the violation of the prohibition against open dumping must be dismissed for failure to state a claim.  The complaint alleges that "[defendants] have engaged in open dumping by their discharge of hazardous waste to open ground where said waste will and has contaminated the soils, groundwater and surface waters as described herein and as further described in the RCRA [notice]" (Compl. ¶ 35).  The appended RCRA notice added (Compl. Exh. A):

> Honeywell is guilty of open dumping, as that term is used in the RCRA, by discharging pollutants to the open ground, thereby allowing these pollutants to discharge to both groundwater and surface waters.  The Site does not qualify as a landfill under 42 U.S.C. § 6944, and does not qualify as a facility for the disposal of hazardous waste.

Section 6945(a) provides that "any solid waste management practice or disposal of solid waste or hazardous waste which constitutes the open dumping of solid waste or hazardous waste is prohibited."  The prohibition against open dumping is enforceable under Section 6972 against persons engaged open dumping.

Defendant replies that plaintiff's claim must be dismissed because plaintiff's allegations are in the past tense whereas the statute only applies to currently ongoing activity.  Not so.  Plaintiff's complaint clearly states "[defendants'] open dumping in violation of RCRA . . . has occurred every day since at least October 1, 2005, or on numerous separate occasions, and that *those violations are continuing*" (Compl. ¶ 38 (emphasis added)).  The continuing violations

12

necessarily include those today. Thus, defendant's motion to dismiss plaintiff's second claim for violation of the prohibition on open dumping is **DENIED**.

### D. Third Claim: Discharge of Pollutants from a Point Source Must Be Regulated by an NPDES Permit.

The third claim alleges that defendants "violated and continue to violate the CWA as evidenced by the discharges of pollutants from a point source without a NPDES permit." Defendants "are discharging pollutants found at the Site, from the Site and various point sources within the Site to waters of the United States; and, that the disposition, discharge and release of pollutants from the Site to surface waters is on-going and has been occurring for more than 20 years." The claim further provides that "[t]he violations of [defendants] are ongoing and will continue after the filing of this complaint" (Compl. ¶¶ 28, 40–41). The CWA notice letter, discussed above, was also incorporated into plaintiff's complaint and stated:

> [F]ormer point sources from the Site continue to discharge pollutants to Belmont Creek. River Watch contends Polluters do not have a NPDES permit for discharging pollutants of the kind described herein to waters of the United States. River Watch hereby notifies Polluters of the fact that they have no NPDES permit allowing them to discharge pollutants to waters of the United States from the Site and numerous point sources within the Site including: the above and below ground storage tanks; chemical storage; recycling equipment; waste ponds and solvent transfer equipment identified in the various records of Polluters and the regulatory agencies which have oversight of the Site.

Furthermore, the letter also stated that the "solid and hazardous waste which was discharged from these tanks is also a point source" (Compl. Exh. B).

Defendant now argues that plaintiff has merely recited the elements of a claim without providing facts, and plaintiff has not alleged that the discharges are ongoing as required by the CWA. Not so. Taking plaintiff's allegations as true, plaintiff has properly pled the discharge of a pollutant from point sources to navigable waters, even identifying the specific pollutants and various point sources on the Site in its notice letter, appended to the complaint. Plaintiff also asserts that defendants had no NPDES permit, and repeatedly alleges that the discharges were continuous and ongoing. Defendant insists that plaintiff admits the point sources only existed in the past, so plaintiff cannot meet the requirements of the Act, which requires a current point source. Even if plaintiff did admit that various point sources identified existed in the past,

plaintiff also alleged in the CWA notice letter that the waste discharged from old point sources is now itself a current point source. Assuming this to be true, it is enough to state a plausible claim for relief under the CWA for discharge of pollutants without the proper permit. Accordingly, defendant's motion to dismiss plaintiff's claim for discharge of pollutants without a permit is **DENIED**.

With respect to all four of plaintiff's claims, defendant also contends that the RCRA and CWA notice letters appended to the complaint should not be read as part of the complaint. For this proposition, defendant cites two non-binding district court decisions (Reply Br. 2). Not only are these decisions not binding on this Court, they are also easily distinguishable. Both dealt with complaints that were devoid of factual allegations but instead attached notice letters. *See, e.g.*, *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, C 10-0121 RS, 2011 WL 445091 (N.D. Cal. Feb. 4, 2011) ("[T]he complaint itself contains virtually no factual allegations to support the claim."). Plaintiff's complaint does not suffer from these deficiencies nor does it plead facts simply by generally alluding to the letters. The complaint pled sufficient facts under each of the above three claims, and plaintiff only incorporated the letters for further details.

Defendant also requests judicial notice of a document that did not bear on the foregoing analysis. Thus, defendant's request for judicial notice is **DENIED AS MOOT**.

## CONCLUSION

For the foregoing reasons, defendant Honeywell's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's fourth claim for relief for storm-water discharge under the CWA is **DISMISSED**. All of plaintiff's other claims remain. Defendant's request for judicial notice is **DENIED AS MOOT**. The hearing scheduled for November 17 is **VACATED**.

As to the dismissed claim, plaintiff may seek leave to amend the complaint after serving a new notice and waiting the 60-day statutory period. The new notice must be served within 14 days from the date of this order. The motion for leave to amend, noticed on the normal 35-day track, must be filed within 7 days after the expiration of the 60-day statutory period. A proposed

amended complaint must be appended to the motion. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein.

**IT IS SO ORDERED.**

Dated: November 14, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE